United States v. Kalumi Good afternoon. May I please the court. My name is James Egan. I represent defendant appellant Zubeda Kalumi. Ms. Kalumi raises several issues regarding her conviction and I'd like to focus primarily on the arguments made in point one, but before I do so, address a couple of issues regarding procedural matters or standards of review with respect to points two and three. In point three, Ms. Kalumi challenges the substantive reasonableness of her sentence and which she has already served. The government argues that that challenge is now moot, but on that score, this court has issued a decision in a case called Maza al-Aluf, which Judge Raji authored, finding that even though a defendant has overserved his prison sentence, he may still challenge that sentence and the court may remand so that the defendant may challenge the length of supervised release. I thought in your brief, you were only challenging the sentence. Yes. You suggested that you wanted to question the supervised release. Did I miss something? No, that's absolutely correct. Why don't you focus on the main argument that you have here about the conviction? Sure. I'd like to focus on the video, the exclusion of the video in which Ms. Kalumi was videotaped giving an interview with an immigration official in 2013. We've argued that the district court abused its discretion in excluding that video for a couple of reasons. First of all, in both sides of the 403 balance, with respect to the probative value, the court relied on reliability issues, which I understand are not supposed to be on that side of the balance, so they may find their way into issues with respect to confusion of the jury, and the government has cited a few cases on that score. I consent that reliability is in the balance, but not on the probative value side. You don't think it goes to what? It's a little hard to understand you. I'm sorry. The probative value of the evidence. You don't think reliability is a factor in probativeness? No. My understanding is that the decisions that have been cited in my review of the case law, reliability can find its way into the other side, whether policy reasons should be excluded, for example, confusing the jury, misleading the jury, and so forth. You don't think it's a factor in United States v. Esdaya? That was the case in which there was exclusion of voice exemplars because the court thought the probative value was minimal and outweighed by unfair prejudice in light of the ease with which a defendant could deliberately alter his accent? No, of course. Actually, I think that case is quite helpful. In that case, the defendant proposed to stand up and read a portion of the newspaper to exhibit his alleged accent. I understand the accent. I'm just asking you whether you think that was not a case in which reliability informed the probativeness v. prejudice analysis. I just want to make sure I understand what line you're drawing here. I'm drawing the line that in that case it was found not to be probative because the purchaser or supplier of narcotics. But that's not what the court says. The court talks about the ease of deliberately altering the accent and the inability of the government, and I'm now quoting, to test the reliability of the reading. I'm just asking you how you conclude that reliability is, you've urged us to find, not a permissible factor to consider in doing the probativeness, probative value analysis of Rule 403. No, I'm sorry. Maybe I was not quite clear. My point is that it's not a factor in determining the probative value. It is a factor in determining whether the probative value is substantially outweighed by some policy consideration, for example, confusing the jury, misleading the jury. In that case, misleading the jury to believe that the defendant had an accent where the government was not able to test that. Now tell us how you think this plays in this case. Okay. So in this case, the government made the video. The government interviewed Koume several times. Three witnesses, three agents, sat at her kitchen table, interviewed her for an hour and a half. Each one of those agents could have been called and was called to testify and could have said, actually, that's not how she talked to us in that video. That would have been fine. But instead, the government argued and the district court found that introduction of that video would not allow the government to cross-examine the reliability of her fluency in English, which is irrational. I mean, the government had plenty of opportunities to do that. They chose not to, and that's their choice. Now, the other consideration... We're on abuse of discretion review, right? Yes. So backing up, yes, abuse of discretion. But in reviewing the evidence, this court views it in light most favorable of the proponent, maximizing the probative value, minimizing its prejudicial effects, so forth. However, of course, the standard is that the district court's analysis has to be irrational or arbitrary. And there's a position that it was the government's inability to cross-examine. But that's not really a basis to find prejudice. Prejudice is that the jury is going to decide on an improper basis. That was misleading the jury. I mean... But the factor was the inability to test the reliability of the accented reading. And here, isn't the factor the inability to test the extent of her English proficiency at the time of the 2013 interview? Yeah. But, I mean, the creation of these two exemplars, if they're called that, are entirely different. I mean, in one case, in our case, the government's making it without any advance warning to Columbia that's going to be videotaped, by the way. And in the other case, the defendant is going to stand up and read a portion of the newspaper. But the court found that she had a motive to minimize her English proficiency at the time of the 2013 interview. Yes. Okay. I mean, everybody has a motive. Well, but now we're talking about whether it's irrational to exclude it. The judge saying that there was a motive to minimize. Now there wasn't going to be an ability to test it. I'm asking you so that we understand why you think the conclusion is irrational. Right. I guess to go back to Esdai, or Esdai, however you pronounce that case name, where in that case, the defendant is going to stand up. The government has no prior opportunity to question the defendant to determine whether he has an accent. In our case, the government had already questioned her, three agents, for an hour and a half. And they could have gotten on the stand after the video was played and say, actually, when we talked to her, that's how she sounded, or that's not how she sounded. The government was not deprived of the opportunity to probe how well she understood English. Well, in fact, there might be an argument as to whether this evidence was cumulative, given that the agents who questioned her in 2011 to 2013 both agreed that they needed to speak slowly, keep it simple, et cetera. So where's the prejudice? Well, I mean, I guess obviously the video is the best evidence of her, not in the evidentiary sense, but just in the kind of common sense, best evidence of how well she understood English and how she relied on other people. How well she understood it a couple of years after, because it wasn't contemporaneous, right? Of course. Yeah. Yeah. I mean, fair enough. But the government offered each witness that had questioned, that knew Kulame, asked how well she understood English. And that was all over the place, 2006 to 2014. There was no, I mean, and there's no indication that her English improved or deteriorated throughout that period. Time's up. If you want to reserve time, you can use it now if you'd prefer. I'll wait. Thank you. Thank you. May it please the court. Chelsea Priest on behalf of the United States. Could you move the microphone down a little bit? Thank you. Yes. Ms. Kulame was convicted of marriage fraud after a three-day jury trial and in which the government introduced evidence not only of her own confession, but also the testimony of multiple witnesses that she misled the government about whether she was married and who was living with her at the time. None of the alleged errors are errors at all, much less do they constitute a reason to reverse any of the district court's decisions. Therefore, the district court should be affirmed. First— Could you address the video? Yeah, I'm interested. Why would it have been so prejudicial for the government to have it be introduced? Your opponent has talked about how the agents, the three agents could have testified as to whether the video reflected her proficiency at the time of the confession, and there was other testimony about her fluency in English. Would it really have been something that the government couldn't have managed? Much like in Azdaya, it would have been much more difficult for the government to effectively challenge the English proficiency shown in the video. You're not really disputing it. I mean, all your agents testified that they had to speak pretty simple, that she needed that kind of help. So, I mean, what was the harm in showing it when you basically agreed that she wasn't that proficient in English? That would also go to the cumulativeness of the evidence. So the fact that it would have been easy to challenge or there was already sufficient evidence on the government side suggests that there was already sufficient evidence going to the English proficiency on the defendant's side as well. So, it may not... Was there any prejudice other than the difficulties in the inability to cross-examine her? There was also the danger of misleading the jury. That was a similar consideration in Azdaya, and the district court was concerned that the jury might think that the interview was part of the confession that was being introduced by the government. The district court also thought that it would be cumulative and also needlessly take up time because the entirety of the 34-minute video would have needed to be shown to the jury. That would have led the trial... This was a three-day trial, though. It wasn't as if it was just a half a day. And there was a substantial sentence imposed. I don't know that showing the half-hour video would have been so difficult. And the other problems seemed to be ones that you could manage through appropriate instructions or argue in a closing about the weight to assign the video. Well, it wasn't just a matter of the 30 minutes, Your Honor. It was the fact that showing the entire video would have introduced extraneous issues, could have possibly misled or confused the jury, and it just wasn't necessary. Like what? There were questions about whether Ms. Calame and her purported husband had gone on That was important. It just would have introduced evidence into the trial that wasn't necessary for the jury and would have... But you didn't ask to have any possible harmful statements that you thought were harmful or confusing excised. I mean, it was a half-hour tape, and you could have made that application to the judge. But you opposed playing any of it. Correct, Your Honor, because we thought that playing the entirety of the video would have been necessary for context. And it's not that other parts of the video would have been even more prejudicial to the government. It's that... And why do you think the whole thing had to be played for context? Because rather than showing just a three- or four-minute clip of Ms. Calame's ability to speak English, it would have shown the entire interview and put her ability in the larger context. The defense could easily have cherry-picked just the first three or four minutes. But you could have worked this out. I mean, you know, it's a half-hour video, so you could have agreed on 20 minutes. You could have agreed on 15 minutes. That's possible, Your Honor, but in the district court's discretion, it decided that that wasn't... The district court decided that it would have been necessary to play the entire video because of the rule of completeness. And it was within the district court's broad discretion to decide that, and excluding it wasn't arbitrary or rational, as this court would need to find to reverse. And in any event, none of this distinguishes this case from Azdaya, where the government could have called other witnesses to testify to the defendant's accent or lack thereof. And in fact, the... In Azdaya, the voice exemplar was created by the defendant, right? Yes. This is a tape created by the government of an interview conducted by the government, right? Yes, that's correct. So I think there is a difference. Am I missing something? That isn't actually a distinction in this case, Your Honor, because the question isn't who created the tape or the exemplar, but the question is what is the motive of the person appearing either by voice or video in the tape. And in both cases, the defendant had a motive to mislead as to English proficiency or an accent. It doesn't matter who made the tape. It matters who appears in the tape and what motives they had at the time, and that's not a distinguishing factor between this case and Azdaya. You have a harmless error argument as well as a backup? Yes, that's correct, Your Honor. Why do you argue that? Well, first, there are three factors to consider in harmless error. The most important one, in our opinion, is that the importance of the excluded evidence was minimal. If you actually review the videotape, it doesn't show an extreme inability to communicate in English. In addition, the evidence was For example, both of the person who interviewed Ms. Calame in 2011 and took the confession and the person who interviewed her in 2013 that was depicted in the video testified that they had to rephrase or speak slower or hesitated or that Ms. Calame hesitated or took time to find words. Putting this video into evidence wouldn't have made a difference or wouldn't have helped the jury in assessing Ms. Calame's English proficiency. Additionally, the strength of the government case was sufficient that even had this been introduced, there would have been a conviction in any event. Could you address the argument about Ms. Cahill's testimony and why it was appropriate for her to testify about the import of some of the documentary evidence and her own decision to question the legitimacy of the marriage? That that was part of the ultimate question here, it seems. Well, the fact that she testified, even if she did testify to a fact that wasn't the ultimate issue, doesn't necessarily make the testimony inadmissible. Rule 704 explicitly says that. As long as her testimony was helpful to the jury, it was admissible. And I'll point out that this wasn't objected to below, so this didn't even necessarily encompass the question that was before the jury. Telling the jury that, in her opinion, this application should not have been granted is far from telling the jury that they should convict Ms. Calame of marriage fraud beyond a reasonable doubt. Additionally, the application itself was in front of the jury, was admitted into evidence, and has a denied stamp on it, so the fact that she testified she wouldn't have recommended that it be granted didn't add much of anything. In any event, it wouldn't constitute a reason to reverse here, because it just simply wasn't that important of evidence. This isn't like the cases in which this Court has reversed, where the objected to testimony refers to the investigation as a whole, or the import of the criminality as a whole. Instead, this was only based on Ms. Cahill's own review of the documents, her own review of the application and petitions. And her testimony wasn't referenced in closing. The only reference to Ms. Cahill by the government was the fact that an interview occurred, but it didn't reference Ms. Cahill's assessment of the documents or her ultimate decision to recommend that the application be denied. So this is distinguishable from the cases that the defendant cites in her brief. If there are no other questions, I'll submit. Thanks. Ms. Breeden, you did reserve two minutes. Thank you. So just a couple points. As to the harmless error analysis, I do want to argue that this should be reviewed under the Capman Reasonable Doubt Standard versus the Kodiakus Fair Assurance Standard, a Ninth Circuit case, United States v. Evans, 720 F. 3rd 953, which holds as much. As to Ms. Cahill's testimony, Judge Carney, I agree, I guess, with the proposition that it was okay for her because her recommendation was going to be in evidence. But the commentary on each item of evidence, whether it was the relative strength or weakness of each item, really sort of, I don't know how that helped the jury in any way to determine whether this was a legitimate marriage or not, other than as a substitute for the jury's own decision. Ms. Esdell, I think it is important that the probative value was really very weak. Isn't it helpful to the jury to hear how these documents play in a normal evaluation of granting the kind of relief that they were submitted in order to secure? She can point out that there, certainly that That was the essence of the fraud, was that they submitted these documents in order to get a favorable ruling from the agency. She did not recommend it, and now she was explaining to the jury how she reached that conclusion. Right. But comments like You just said you didn't understand how it was helpful to the jury, and I'm asking you why it wouldn't have been helpful for them to understand why these documents would not be viewed favorably in the very process that your client and her spouse were trying to secure relief in. It certainly would be helpful in the sense of reaching the verdict that the government wanted. But would it be helpful In understanding of the witness's testimony, I mean, the witness was saying, I didn't recommend it. Now the other testimony explains why. Yeah, but I thought they would come in with better evidence. They didn't. That's not the standard. I mean, 7-0 That was what she said. Kevin Cameron says that we'll allow the witness to testify on an ultimate issue so long as the testimony is helpful to an understanding of the witness's testimony or the determination of a fact in issue. Does it satisfy that standard or not, in your view? Does it matter that, ultimately, does it even matter that she recommended that the petition be denied? Because we are on plain error I understand. And I get that I'm facing a much broader, bigger hill on that point. But in Thank you. Thank you very much. We'll take a case under advisement.